IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALLEN BROWN, JR., #R53255, | |
| Plaintiff, | Case No. 23-cv-00107-SPM |
| v. | |
| STATE OF ILLINOIS, WEXFORD HEALTH SOURCES, INC. ANGELA CRAIN, KIMBERLY MARTIN, CARRI MORRIS, ROB JEFFREYS, LAWRENCE, THENA POTEAT, ANTHONY WILLS ILLINOIS DEPARTMENT OF CORRECTIONS LEWIS SHICKER, JANE DOES, SHANE REISTER, DR. WILLIAM PUGA, MELVIN HINTON, J.B. PRITZKER, and JOHN DOE, | |
| Defendants. | |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Allen Brown, an inmate of the Illinois Department of Corrections ("IDOC"), filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

### THE COMPLAINT

During the relevant time periods, Plaintiff resided at Menard Correctional Center in the residential treatment unit ("RTU"). (Doc. 1, p. 25). Plaintiff is designated as having a serious mental illness ("SMI") and is prescribed Zyprexa, a psychotropic medication. In 2018, it was determined that without Zyprexa Plaintiff posed a substantial risk to himself or others, and Plaintiff was placed on "enforced status," meaning the medication was involuntarily administered if Plaintiff refused to take it. (*Id.*). Despite this history, on October 16, 17, 18, 19, 28, and 29, 2021, Plaintiff's medications were not administered. (*Id.* at p. 26). Plaintiff asserts that this lapse in treatment was caused by (1) staffing shortages; (2) a lack of policies and practices; and (3) nursing staff refusing to pass out medications and failing to ensure he received adequate healthcare. (*Id.*).

Plaintiff notified staff that his medication was not being administered by writing letters to Psychologist Administrator Carri Morris, his treating psychiatrist Dr. Poteat, Director of Nursing Kimberly Martin, Health Care Administrator Angela Crain, Assistant Warden of Programs Lawrence, and Warden Wills. (Doc. 1, p. 26). Plaintiff advised them that he did not receive his medication on October 16 and 17 because there were "no nurses to pass medications and the one nurse present in the institution refused to come to the cellhouse to administer [his] medications" when called and informed about Plaintiff's enforced status. Plaintiff wrote that he needed his "meds because without them [he] self harm[s] and assault[s] people." (*Id.*). Plaintiff states that he gave these letters to a correctional officer to place in the institutional mail, and despite this notice, Defendants failed to act to protect him from harm or ensure he received his medicine. (*Id.* at p. 27). He never received a response. (*Id.*).

Plaintiff also wrote an emergency grievance on October 28, 2021. (Doc. 1, p. 8). In the grievance Plaintiff states that he did not receive his medication on October 16, 17, 19, and 28. The grievance was affirmed, and the grievance officer recorded that "individuals in custody did not

receive [morning] prescribed medication or insulin due to nursing staff shortage." (*Id.* at p. 11).

Without his medication, Plaintiff suffered extreme mental anguish and engaged in self-harm by inserting a screw into his penis, punching a wall, and cutting his testicle. (Doc. 1, p. 27). On November 3, 2021, he cut his leg, broke his fan, and ingested "foreign bodies." (*Id.* at p. 27-28). As a result, Plaintiff was hospitalized and had two separate operations at St. Louis University Hospital. (*Id.* at p. 28).

### PRELIMINARY DISMISSALS

The Court dismisses any claims Plaintiff is intending to bring under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). (Doc. 1, p. 1-3). Plaintiff states that because Defendants failed to act to protect him from harm and ensure he received his medication, they violated the ADA and RA. (*Id.* at p. 27).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act prohibits any agency that receives federal funds from excluding, subjecting to discrimination, or denying the benefits of any of their programs to otherwise qualified individuals with disabilities. 29 U.S.C. § 794(a). Failure to make reasonable accommodations to ensure participation in the public entity's programs or services by a person with a disability qualifies as "discrimination." 42 U.S.C. § 12112(b)(5)(A). The ADA and RA are not, however, violated "by a prison's simply failing to attend to the medical needs of its disabled prisoners." *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996). "A claim for inadequate medical treatment is not actionable" under the ADA or RA. *Bilik v. Shearing,* No. 16-cv-821-NJR, 2020 WL 64626, at *10 (S.D. Ill. Jan. 7, 2020) (citing *Bryant,* 84 F. 3d at 249; *Johnson v. Redmond*, No. 17 C 50210, 2017 WL 6813706, at *2 (N.D. Ill. Oct. 30, 2017); *Wilson v. Murphy,* No. 14-

CV-222-BBC, 2016 WL 1248993, at *6 (W.D. Wis. Mar. 29, 2016)).

In the Complaint, Plaintiff does not allege he was discriminated against, nor does he claim that he was denied medication *because* of his disability. He is simply arguing that Defendants violated the ADA and the RA by not administering his medication on certain dates as prescribed. Accordingly, Plaintiff has failed to state a claim under the ADA and RA, and these claims are dismissed without prejudice.

The Court also dismisses from this action all claims alleged against the State of Illinois and the Illinois Department of Corrections. Neither the State of Illinois nor the Illinois Department of Corrections is considered a "person" subject to suit for money damages under Section 1983. *Thomas v. Ill.*, 697 F.3d 612, 613 (7th Cir. 2012). Additionally, a state agency cannot be sued for prospective injunctive relief in federal court. *See Quick v. Ill. Dep't of Fin. & Prof'l Regulation*, 468 F. Supp. 3d 1001, 1009 (N.D. Ill. June 23, 2020) (collecting cases).

Plaintiff is suing Director Jeffreys, Chief of Medical Services Shicker, John Doe Cellhouse Lieutenants, Chief of Psychiatry Puga, Chief of Mental Health Services Hinton, Governor Pritzker, and John Doe Regional Medical Director in their official capacities only. (Doc. 1, p. 20, 21, 22, 23, 24). With the exception of Defendant Shane Reister, Plaintiff sues the remaining defendants in their individual and official capacities.[1] Claims against a government employee in his or her official capacity are limited to injunctive relief. *MSA Realty Corp. v. State of Ill.*, 990 F.2d 288, 291 (7th Cir.1993) ("[S]tate officials may be sued in their official capacities for injunctive relief, although they may not be sued for money damages."). In this lawsuit, Plaintiff seeks only money damages (Doc. 1, p. 30), and thus, his official capacity claims against all Defendants are dismissed without prejudice. Because there are no other claims against Defendants Jeffreys, Shicker, John

---

[1] Plaintiff does not specify whether he is suing Defendant Shane Reister, the regional mental health administrator, in his official or individual capacity. (Doc. 1, p. 23).

Doe Cellhouse Lieutenants, Puga, Hinton, Pritzker, and John Doe Regional Medical Director, they shall be terminated as parties in this lawsuit.

Finally, the Court dismisses Plaintiff's due process claims. Plaintiff states that in failing to protect him from harm and ensure he received his medication, Defendants committed due process violations under the Fourteenth Amendment. (Doc. 1, p. 27). The Court construes this claim as being brought under the substantive due process clause of the Fourteenth Amendment. The Eighth Amendment, however, provides an explicit source of constitutional protection for Plaintiff's deliberate indifference and failure to protect claims and therefore displaces his due process claim. *See Cty. of Sacramento v. Lewis,* 523 U.S. 833, 842 (1998) (where a particular Amendment protects against the government conduct at issue, the court must analyze the claims under that Amendment, not substantive due process); *Childress v. Walker,* 787 F.3d 433, 438-39 (7th Cir. 2015). Accordingly, Plaintiff's Fourteenth Amendment claims are dismissed with prejudice.

## Discussion

Based on the allegations in the Complaint and Plaintiff's articulation of his claims, the Court designates the following counts in this pro se action:

**Count 1:** Eighth Amendment claim against Wexford Health Sources, Inc., Crain, Martin, Morris, Lawrence, Poteat, Wills, Janes Does, and Reister for deliberate indifference to Plaintiff's serious medical needs by failing to provide him with medication on October 16, 17, 18, 19, 28, and 29, 2021.

**Count 2:** Eighth Amendment claim against Wexford Health Sources, Inc., Crain, Martin, Morris, Lawrence, Poteat, Wills, Janes Does, and Reister for failing to protect Plaintiff from self-harm.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice**

**as inadequately pled under the *Twombly*[2] pleading standard.**

### Count 1

Count 1 will proceed against Wexford Health Sources, Inc. ("Wexford"). *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021). Plaintiff claims that Wexford had a policy or practice of not maintaining adequate staffing levels of nurses necessary to properly and timely administer medications. (Doc. 1, p. 18). This staffing shortage resulted in missed doses of medication and Plaintiff's self-harm.

Count 1 will also proceed against Crain, Martin, Morris, Lawrence, Poteat, and Wills. Plaintiff alleges not only that he personally notified these Defendants that he was not receiving his medication but also that Defendants were generally aware of staffing shortages from other class action lawsuits and failed to act. (Doc. 1, p. 26, 29). *See Daniel Cook Cty.*, 833 F. 3d 728, 735 (7th Cir. 2016) (a policy maker of official may be liable if he or she "knew about these deficiencies and failed to correct them"); *Board v. Farnham,* 394 F. 3d 469, 485 (7th Cir. 2005) ("deliberate indifference can be evidenced by repeated examples of negligent acts which disclose a pattern of conduct by the prison medical staff") (internal quotations and citations omitted).

Plaintiff describes the Jane Does as members of nursing staff who are responsible for the administration of health care and medical treatment to individuals in custody. (Doc. 1, p. 22). The only nurse whose conduct is described in the statement of claim is the nurse who was contacted regarding Plaintiff's medication needs by Sergeant Chitty and refused to come to the cellhouse to administer the medication. (*Id.* at p. 26). Section 1983 liability requires the individual defendant to have "caused or participated in a constitutional violation." *Pepper v. Vill. Of Oak Park.,* 430 F. 3d 805, 810 (7th Cir. 2005). Count 1 will therefore proceed against this single Jane Doe, who knew

---

[2] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

Plaintiff was in need of his medication but did not administer it, but Count 1 is dismissed without prejudice as to the other unknown nurses.

While liability under Section 1983 requires personal involvement in the alleged constitutional violation, an individual setting prison policy may be liable "if they are aware of a systematic lapse in enforcement of a policy critical to ensuring inmate safety yet fail to enforce that policy." *Sinn v. Lemmon*, 911 F.3d 412, 423 (7th Cir. 2018) (internal citations and quotations omitted). *See also Doyle v. Camelot Care Centers, Inc.,* 305 F.3d 603, 615 (7th Cir. 2002) (finding under 42 U.S.C. § 1983 that allegations that agency's most senior officials were personally "responsible for creating the policies, practices and customs that caused the constitutional deprivations...suffice at this stage in the litigation to demonstrate...personal involvement in [the] purported unconstitutional conduct"). Plaintiff alleges that Shane Reister, the southern district regional mental health administrator for IDOC, was aware of the risk of harm caused to inmates by the nursing staffing shortages but failed to take reasonable measures to address the issue. (Doc. 1, p. 28-29). Plaintiff claims that Reister knew of the harm caused by the staffing shortages from previous lawsuits that have been filed by other inmates. At this stage, Plaintiff has stated a claim against Reister.

**Count 2**

In instances of self-harm or suicide, a plaintiff must plausibly allege that the defendants were "aware of the significant likelihood that an inmate may imminently seek to take his own life yet fail to take reasonable steps to prevent the inmate from performing the act." *Pittman ex rel. Hamilton v. Cty. Of Maddison, Ill.,* 746 F. 3d 766, 775 (7th Cir. 2014) (internal citations and quotations omitted). "A risk of future harm must be sure or very likely to give rise to sufficiently imminent dangers before an official can be liable for ignoring that risk." *Davis-Clair v. Turck*, 714 F. App'x 605, 606 (7th Cir. 2018) (citing *Baze v. Rees,* 553 U.S. 35, 50 (2008)) (internal quotations

omitted).

The Court finds that Plaintiff has failed to state a claim for failure to protect. The letter informing Defendants Morris, Poteat, Martin, Crain, Lawrence, and Wills that without his medication Plaintiff self-harms and assaults others, "does not convey an imminent risk," and is not sufficient to establish that these Defendants had the requisite knowledge. Furthermore, Plaintiff does not assert that he spoke to or otherwise communicated with any of the other Defendants prior to inflicting self-harm on October 28, 2021, and November 3, 2021. *See Turck,* 714 F. App'x at 606. Accordingly, Count 2 is dismissed without prejudice.

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a motion asking the Court to recruit counsel on his behalf. (Doc. 2). Pursuant to 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel." When faced with a motion for recruitment of counsel the Court applies a two part test: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Plaintiff has satisfied the first prong of the inquiry. He states that he has contacted four attorneys prior to requesting assistance from the Court and provided declination letters from three law firms. As to his ability to represent himself, Plaintiff asserts that he is in need of representation because he has a serious mental illness, and he is not familiar with the legal process.

The Court finds that Plaintiff is capable of representing himself at this stage of the case. Plaintiff's lack of legal knowledge is not unique to him as a pro se litigant, and he does not explain how his mental illness hinders him from effectively prosecuting his claims. Plaintiff's pleadings demonstrate an ability to construct clear sentences and relay information to the Court. Once discovery has commenced, if Plaintiff has significant difficulty, he may refile his motion. For these

reasons, the motion is **DENIED.**

### UNIDENTIFIED DEFENDANTS

Plaintiff will have the opportunity to engage in limited discovery to ascertain the identity of the unknown defendant, Nurse Jane Doe. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, Warden Wills is already named as a party, and he shall respond to discovery aimed at identifying these unknown defendants. Guidelines for discovery will be set in a separate order. Once the name of the unknown defendant is discovered, Plaintiff shall file a motion to substitute the newly identified defendant in place of the generic designation in the case caption and throughout the Complaint.

### DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. Count 1 will proceed against Wexford Health Sources, Inc., Crain, Martin, Morris, Lawrence, Poteat, Wills, Nurse Jane Doe, and Reister. Count 1 is **DISMISSED without prejudice** against Jane Does, *nursing staff*. The Clerk of Court is **DIRECTED** to **ADD** Nurse Jane Doe as a party on the docket and **TERMINATE** Janes Does as defendants. Count 2 is **DISMISSED without prejudice.**

All official capacity claims are **DISMISSED without prejudice.** Because there are no other claims against Defendants Jeffreys, Shicker, John Doe Cellhouse Lieutenants, Puga, Hinton, Pritzker, and John Doe Regional Medical Director, the Clerk of Court shall **TERMINATE** them as parties in this lawsuit.

All claims for money damages brought under Section 1983 against the Illinois Department of Corrections and the State of Illinois are **DISMISSED with prejudice.** The Clerk of Court shall **TERMINATE** the Illinois Department of Corrections and the State of Illinois as defendants.

As this case involves claims regarding Plaintiff's medical care, the Clerk is **DIRECTED**

Page 9 of 11

to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court **SHALL** prepare for Wexford Health Sources, Inc., Crain, Martin, Morris, Lawrence, Poteat, Wills, Reister and Nurse Jane Doe (once identified) the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendants' place of employment. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants should respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a

delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 25, 2023**

                                                  *s/Stephen P. McGlynn*
                                                  **STEPHEN P. MCGLYNN**
                                                  **United States District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.