IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALLEN BROWN, JR., <br><br> **Plaintiff,** <br><br> v. <br><br> WEXFORD HEALTH SOURCES, INC., *et al.*, <br><br> **Defendant.** | Case No. 23-cv-00107-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on motions for summary judgment filed by Defendants. Wexford Health Sources, Inc. (Wexford), Poteat, Morris, Lawrence, Reister, and Cooper,[1] counsel for the Estate of Kimberly Martin. (Doc. 90, 94).[2] Defendants argue that Plaintiff Brown failed to exhaust his administrative remedies prior to filing this lawsuit. Plaintiff filed a response in opposition to the motions. (Doc. 104). For the reasons set forth below, the motions for summary judgment are denied.

### BACKGROUND

Plaintiff Allen Brown, an inmate of the Illinois Department of Corrections (IDOC), filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). In the Complaint, Plaintiff states that he is designated as having a serious mental illness

---

[1] On April 10, 2024, the Court entered an order substituting Rebecca Cooper, as counsel for the Estate of Kimberly Martin, for Kimberly Martin, who is deceased. (Doc. 55).
[2] The motion to withdraw the affirmative defense of exhaustion filed by Defendants Crain and Wills is **GRANTED**. (Doc. 93). Defendant Brand did not file a motion for summary judgment by the deadline set in the Initial Scheduling and Discovery Order, and therefore, the affirmative defense is **DEEMED withdrawn** by Brand. (*See* Doc. 72, p. 5) (a "new party shall have 60 days from the date of its Answer to file a motion for summary judgment for failure to exhaust administrative remedies.").

(SMI) and is prescribed Zyprexa, a psychotropic medication. In 2018, it was determined that without Zyprexa Plaintiff posed a substantial risk to himself or others, and Plaintiff was placed on "enforced status," meaning the medication is to be involuntarily administered if Plaintiff refuses to take it. Despite his mental health condition and medical history, while housed at Menard Correctional Center, on October 16, 17, 18, 19, 28, and 29, 2021, Plaintiff's medication was not administered. Without his medication, Plaintiff suffered extreme mental anguish and engaged in self-harm by inserting a screw into his penis, punching a wall, and cutting his testicle. On November 3, 2021, he cut his leg, broke his fan, and ingested "foreign bodies." As a result, Plaintiff states that he was hospitalized and had two separate operations at St. Louis University Hospital.

Following a review of the Complaint, Plaintiff is proceeding on an Eighth Amendment claim against Defendants for deliberate indifference to his serious medical needs by failing to provide him with needed medication in October 2021. (Doc. 20).

### LEGAL STANDARDS

#### *I. Summary Judgment*

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). The moving party is entitled to judgment as a matter of law when the pleadings, answers to interrogatories, depositions, and admissions, along with affidavits, show that there is no genuine issue of material fact. FED. R. CIV. P. 56(c).

#### *II. Exhaustion of Administrative Remedies*

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The PLRA states, in pertinent part, that "no action shall be

brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion of available administrative remedies must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005).

### III. Grievance Procedures

As an inmate in the custody of IDOC, Plaintiff was required to follow the grievance procedure laid out in the Illinois Administrative Code (grievance procedures). 20 ILL. ADMIN. CODE § 504.800, *et seq*. Relevant to this case are the procedures pertaining to filing emergency grievances. In order to have a grievance addressed in an expedited manner, the inmate must forward the grievance directly to the Chief Administrative Officer (CAO), who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus, the grievance should be handled on an emergency basis. 20 ILL. ADMIN. CODE § 504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 ILL. ADMIN. CODE §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall

expedite processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

**ANALYSIS**

The Court finds it necessary to only address a single grievance, Grievance #355-10-21, dated October 28, 2021, and filed as an emergency grievance. (Doc. 104-3, p. 4-5). In the grievance, Plaintiff states that he is seriously mentally ill and on enforced medication. He grieves that on the dates of October 16, 17, 19, and 28, nursing staff refused to dispense his psychotropic medications. Plaintiff writes that the medication "help[s] with being suicidal, self harm and assaultive behaviors." He asserts that "Menard" has continually proved to be inadequate at providing for his treatment and safety. Plaintiff asks to be transferred to another facility so that he can be provided adequate mental health care. (*Id.*).

On November 1, 2021, Warden Wills deemed the grievance an emergency. (Doc. 104-3, p. 4). The grievance officer reviewed Plaintiff's grievance and noted that per Angela Crain, the healthcare unit administrator, "individuals in custody did not receive the A.M. prescribed medication or insulin due to nursing staff shortage. The Warden and State Medical Director were notified of the issue." (*Id.* at p. 3). The grievance officer recommended that the grievance be affirmed, and Warden Wills concurred in the recommendation on November 10, 2021. Plaintiff then appealed the grievance to the Administrative Review Board. (*Id.*). The Administrative Review Board affirmed Grievance #355-10-21 on December 9, 2021. (*Id.* at p. 2).

Defendants Wexford, Poteat, Morris, Lawrence, Reister, and Cooper do not dispute that Plaintiff followed grievance procedures in submitting and appealing Grievance #355-10-21. They argue, however, that Grievance #355-10-21 cannot serve to exhaust Plaintiff's claim in this case because the grievance does contain the requisite factual details concerning Plaintiff's claim against them. (Doc. 91, p. 13-14; Doc. 94, p. 6). Defendants state that the grievance only associates wrongful conduct with "nursing staff," and does not name, describe, or put forth complaints of

wrongdoing against the individual Defendants. Thus, the grievance does not sufficiently identify Defendants and failed to allow for meaningful review of Defendants' alleged conduct. (*Id.*).

The Court disagrees. While the grievance procedures instruct an inmate to name or at least describe, "each person who is the subject of or who is otherwise involved in the complaint," 20 ILL. ADMIN. CODE §504.810(c), as Plaintiff argues, failing to name an individual does not preclude an inmate from filing a grievance. *Id.* Additionally, the fact that Plaintiff did not name or describe the individual Defendants is not "fatal to the issue of exhaustion." See *Arce v. Wexford Health Services,* No. 18-cv-1348-SMY-GCS, 2019 WL 6702692, at *5 (S.D. Ill. Oct. 9, 2019). Inmates are only required to identify individuals "to the extent necessary to serve a grievance's function of giving 'prison officials a fair opportunity to address [the prisoner's] complaints.'" (Doc. 104, p. 8) (quoting *Maddox v. Love,* 655 F. 3d 709, 722 (7th Cir. 2011)). Grievance #355-10-21 meets this purpose. The grievance sufficiently describes Plaintiff's complaint in this case – that he was denied psychotropic medication on several occasions in October 2021; medication that was necessary to prevent self-harm and aggressive behavior. Plaintiff is not expected to know the innerworkings of the healthcare operations within Menard or IDOC at large or who was responsible or at fault for the issues with his medication. See *Glick v. Walker,* 385 F. App'x 579, 582 (7th Cir. 2010) ("it would be unreasonable to expect that, for every set of facts, an inmate will be able to peel back layers of bureaucracy and match a disputed decision with the prison employee responsible for that decision."); *Dawson v. Baldwin,* No. 19 C 50058, 2021 WL 3917023, at *7 (N.D. Ill. July 30, 2021) (noting that the grievance process is "silent regarding what happens when the inmate is not necessarily complaining about a specific person or when the inmate has no idea who is responsible for the problem"). And "the grievance process is not intended to provide individual notice to each defendant who might be sued later." *Anderson v. Siddiqui,* No. 22-cv-00221-SPM, 2024 WL 3887594, at *4 (S.D. Ill. Aug. 21, 2024) (citing *Jones v. Bock,* 549 U.S. 199, 219 (2007)). Based

on the details Plaintiff provided in Grievance #355-10-21, the grievance officials were able to (1) investigate Plaintiff complaints by contacting various employees at different levels of the bureaucracy – the healthcare unit administrator, the warden, and the state medical director; and (2) rule on the merits. (Doc. 104-3, p. 3). Thus, the grievance successfully serves to exhaust Plaintiff's claims against IDOC and Wexford employees – Morris, Lawrence, Poteat, Reister, and Martin.

Grievance #355-10-21 also serves to exhaust Plaintiff's claim against Wexford. In the grievance, Plaintiff grieves repeated denial of his medication, and he faults "Menard" for continually failing to provide adequate medical treatment and ensure his safety. (Doc. 104-3, p. 4). He seeks a transfer so that he can be provided adequate care. (*Id.*). Plaintiff clearly alludes to a pattern or practice of poor healthcare, alerting officials that his complaints could be attributed to Wexford, the healthcare contractor. *See Cox v. Wexford Health Sources, Inc.,* No. 16-cv-137-SMY-RJD, 2017 WL 3388159, at *3 (S.D. Ill. Aug. 17, 2017) ("where the plaintiff is claiming a broad denial of proper treatment by the health care unit as a whole, he will not be found at fault for failing to name Wexford itself." (quoting *Williams v. Carter*, No. 12 C 50140, 2012 WL 4815476, at *2 (N.D. Ill. Oct. 10, 2012))).

And finally, the argument that Plaintiff failed to exhaust his claims against Defendants Wexford and Poteat specifically as to the denial of medication on October 18 and 29 because those dates were not included in Grievance #355-10-21 is not well taken. (*See* Doc. 91, p. 14). According to the continuing violation doctrine recognized by the Seventh Circuit in *Turley v. Rednour*, an inmate "need not file multiple, successive grievances raising the same issue" because "once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion recruitment." 729 F.3d 645, 650 (7th Cir. 2013). Here, under *Turley,* Plaintiff did not need to file an additional grievance for the denial of medication on October 29, which occurred the day after he submitted Grievance #355-10-21, as he had already alerted prison

officials that he was repeatedly being denied medication, and the denial of medication on October 29 was a continuation of this previous complaint. There was also no need for Plaintiff to file a separate grievance because the date October 18 was not listed in the grievance as a date in which he was denied medication, even though October 18 is in the Complaint. A grievance is not meant to mirror a complaint filed in federal court, and as stated, Grievance #355-10-21 gave a fair opportunity to prison officials to address Plaintiff's complaint that he had been recurrently denied medication in October 2021. The exclusion of October 18 from the list of dates provided in the grievance does not alter this conclusion. Thus, construing the evidence in Plaintiff's favor, Grievance #355-10-21 was filed in accordance with grievance procedures and served its necessary function of giving corrections officials time to address his complaints. The motions for summary judgment are denied.

Of final note, the Court must address the filing of hundreds of pages of exhibits by Defendants that are wholly irrelevant to the arguments made in the motions for summary judgment. Take for example, grievance records from 2023 when Plaintiff was Dixon Correctional Center and grievance records from 2017 when Plaintiff was at Pontiac Correctional Center (Doc. 91-1, Doc. 91-2; Doc. 94-1). The inclusion of irrelevant documents can cause a waste of judicial resources because the Court carefully reviews documents submitted at the summary judgment phase. Counsel should avoid the inclusion of unnecessary documents in the future.

## DISPOSITION

For the reasons stated above, the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 90) filed by Defendants Wexford Health Sources, Inc., and Poteat and the Motion for Summary Judgment on Exhaustion of Administrative Remedies (Doc. 94) filed by Defendants Morris, Lawrence, Reister, and Cooper are **DENIED**. The Motion to Withdraw the Affirmative Defense of Exhaustion of Administrative Remedies (Doc. 93) filed by Defendants

Crain and Wills is **GRANTED**.

The stay on merits discovery is **LIFTED**, and the parties can proceed with discovery on the merits. A new scheduling order will be entered by separate order.

**IT IS SO ORDERED.**

**DATED: March 6, 2025**

                                             *s/Stephen P. McGlynn*
                                             **STEPHEN P. MCGLYNN**
                                             **United States District Judge**