IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALLEN BROWN, Jr., <br><br> **Plaintiff,** <br><br> v. <br><br> WEXFORD HEALTH SOURCES, et al., <br><br> **Defendants.** | Case No. 23-CV-00107-SPM |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Before the Court are two Motions to Dismiss: one filed by Defendants Nicole Brand, Rebecca Cooper, Angela Crain, Advup Lawrence, Carri Morris, Shane Reister, and Anthony Wills[1] (Doc. 121) and one filed by Defendants Glen Babich, Thena Poteat, and Wexford Health Sources, Inc. (Doc. 126). Plaintiff Allen Brown, Jr. filed a Response to each Motion to Dismiss. (Docs. 129, 130). Having been fully informed of the issues presented, Defendants Brand, Cooper, Crain, Lawrence, Morris, Reister, and Wills' Motion to Dismiss is **GRANTED in part and DENIED in part**. Defendants Babich, Poteat, and Wexford's Motion to Dismiss is **GRANTED in part and DENIED in part**.

---

[1] On May 20, 2025, this Court granted Defendant Melissa Ogle's request to join Defendants Brand, Cooper, Crain, Lawrence, Morris, Reister, and Wills's Motion to Dismiss (Doc. 121). (*See* Docs. 134, 135). Defendant Ogle filed a Response in which she reiterated her support for the arguments in Brand et al.'s Motion to Dismiss. (*See* Doc. 136).

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Allen Brown, Jr. is an individual in the custody of the Illinois Department of Corrections ("IDOC"). (Doc. 1). He was incarcerated at Menard Correctional Center from July 9, 2021 to May 19, 2022. (*Id.*, ¶ 1). The crux of his claims involves six days during 2021 when he was not provided his psychotropic medication while incarcerated at Menard Correctional Center. (Doc. 120, ¶¶ 1, 40–52).

Brown has been on "enforced medication status"—meaning that his psychotropic medications are forcibly administered to him if he will not take them himself—since July 2018. (*See id.*, ¶ 19). When Brown first arrived at Menard on July 10, 2021, Defendant Poteat noted that Brown had "a history of 'repeated self-injurious behaviors' and many suicide attempts, including a recent attempt in December 2020 while in custody at Joliet Treatment Center." (*Id.*, ¶ 20). Brown "had multiple old scars and recently inserted metal paperclips and staples into his arms and legs" and was determined to be "at moderate risk of suicide and at high risk of aggressive behavior." (*Id*). Additionally, "[w]ithin a week of his evaluation with Defendant Poteat, Mr. Brown had swallowed several screws and was placed on continuous crisis watch as a result." (*Id.*, ¶ 21). During time he was at Menard, Mr. Brown was diagnosed with "bipolar disorder, PTSD, borderline personality disorder, antisocial personality disorder, and substance use disorder." (*Id.*, ¶ 20). Brown spent some forty days on crisis watch, from August 26, 2021 to October 6, 2021. (*Id.*, ¶ 31). Subsequently, on October 16–19 and 28–29, Brown's psychotropic mediations were not administered to him. (*Id.*, ¶ 40). On October 28, "Mr. Brown inserted a screw into

his penis, punched the wall, and cut his testicle." (*Id.*, ¶ 43). He later cut his leg and ingested "foreign bodies from a broken fan" on or around November 3 (*id.*, ¶ 45) and inserted a foreign object into both eyes on November 12 (*id.*, ¶ 47). He was treated at St. Louis University Hospital after both incidents. (*Id.*, ¶¶ 46–47)

Brown filed his initial *pro se* Complaint on January 12, 2023; his Complaint listed eighteen named defendants and alleged various claims pursuant to 42 U.S.C. § 1983. (*See* Doc. 1). This Court conducted preliminary review in accordance with 28 U.S.C. § 1915A on September 25, 2023. (Doc. 20). The Court permitted Brown's Eighth Amendment deliberate indifference claims against Wexford, Crain, Martin, Morris, Lawrence, Poteat, Wills, Reister, and Nurse Jane Doe for failure to provide him with his required medication on October 16, 17, 18, 19, 28, and 29, 2021 to proceed into discovery. (*See* Doc. 20, p. 5). Defendants Cooper, Lawrence, Morris, and Reister filed a Motion for Summary Judgment on exhaustion of administrative remedies on September 9, 2024 (Doc. 94); this Court denied the Motion on March 6, 2025 (Doc. 112) and set a Scheduling Order on the same day (Doc. 113).

On October 4, 2024, Attorney Nicole Schult of Uptown People's Law Center in Chicago entered an appearance as counsel of record for Plaintiff Brown.[2] (*See* Doc. 99). Plaintiff Brown filed a Motion to Amend his Complaint on March 21, 2025 (Doc. 118), which this Court granted on March 24, 2025 (Doc. 119). The Amended Complaint alleges that following claims: (1) Eighth Amendment deliberate indifference against Defendants Angela Crain, Kimberly Martin, Carrie Morris, Rob

---

[2] Attorneys Shireen Jalali-Yazdi and Ian McCollum subsequently entered appearances on behalf of Brown. (*See* Docs. 109, 111).

Jeffreys, Advup Lawrence, Thena Poteat, Anthony Wills, Lewis Shicker, Nicole Brand, Melissa Ogle, Shane Reister, Melvin Hinton, and Glen Babich; (2) Eighth Amendment failure to protect against Defendants Wills, Poteat, and Crain; (3) Eighth Amendment deliberate indifference against Wexford Health Sources; (4) Illinois state law institutional negligence against Wexford; (5) Illinois state law medical malpractice against Defendants Poteat, Babich, and Reister; and (6) Illinois state law medical malpractice against Wexford. (*See* Doc. 120).

The two groups of Defendants discussed *supra* filed the pending Motions to Dismiss on April 4 and April 7, 2025, respectively.[3] (*See* Docs. 121, 126). Brown responded to each on May 5, 2025. (*See* Docs. 129, 130). Defendants Babich, Poteat, and Wexford filed a Reply on May 19, 2025. (*See* Doc. 133).

## APPLICABLE LAW AND LEGAL STANDARDS

In analyzing a motion to dismiss for failure to state a claim filed pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must determine whether or not the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court of Appeals for the Seventh Circuit has explained that "'[p]lausibility' is not a synonym for 'probability' in this context, but it asks for 'more than a sheer possibility that a defendant has acted unlawfully.'" *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) (quoting *Olson v. Champaign County*, 784 F.3d 1093, 1099

---

[3] *See supra* note 1.

(7th Cir. 2015)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [the] [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

District courts are required by the Court of Appeals for the Seventh Circuit to review the facts and arguments in Rule 12(b)(6) motions "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

## ANALYSIS

When assessing Brown's Amended Complaint, the Court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645 (7th Cir. 2013). Conclusory statements and labels, however, are not enough. *Id*. The complaint must allege enough facts to "state a claim to relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (quoting *Twombly*, 550 U.S. at 570). That means "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to her that might be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010). "[I]nstead, the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Id.* at 404.

**I. Preliminary Review Pursuant to 28 U.S.C. § 1915A**

Before delving too deeply into the analysis here, this Court must address an argument made in both Motions to Dismiss. (*See* Docs. 121, 126). Citing the same case (and using the exact same language), both groups of Defendants argue in the alternative that the Amended Complaint must be subject to preliminary review pursuant to 28 U.S.C. § 1915A. (*See* Doc. 121, p. 7; Doc. 126, p. 12). Section 1915A does not distinguish between complaints filed *pro se* or by counsel. *See id.* § 1915A(a) ("The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.").

District courts have held that the preliminary screening requirement is not mandatory for prisoners represented by counsel, as attorneys' adherence to Federal Rule of Civil Procedure 11 "tend[s] to substantially reduce the incidence of claims that are frivolous or otherwise patently noncognizable on their face." *Simmons v. CDCR*, 49 F. Supp. 3d 700, 701 (E.D. Cal. 2014). "Screening of represented cases to decipher the allegations and claims is usually unnecessary" when the inmate in question is represented by counsel. *See id.* The case cited by the Defendants involved an amended complaint filed *pro se*, not by counsel. *See Bynum v. DTU Task Force*, No. 23-CV-02748-SMY, 2023 WL 8372827 (S.D. Ill. Dec. 4, 2023); (*see* Doc. 121, p. 7 (citing the same); Doc. 126, p. 12 (citing the same)). However, the preliminary review standard is identical to that provided by Rule 12(b)(6). *See, e.g.*, *McNeil v. Salvation Army*, 754 F. App'x 469, 470 (7th Cir. 2019) (citing *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013)) ("We review dismissals under 28 U.S.C. §

1915(e)(2) de novo and apply the same standards that we apply to Rule 12(b)(6) dismissals, taking McNeil's well-pleaded allegations as true and viewing them in the light most favorable to her.").

Brown is now represented by counsel. (*See* Docs. 99, 109, 111). This means that Brown's attorneys are subject to Rule 11 sanctions if any of the claims in the Amended Complaint are improper, frivolous, or lack evidentiary support. Moreover, the Seventh Circuit has stated that § 1915A screening uses the same standard as does Rule 12(b)(6). *See McNeil*, 754 F. App'x at 470 (citations omitted); *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011) (citing *Sanders v. Sheahan*, 198 F.3d 626, 626 (7th Cir. 1999)) ("We review a failure to state a claim under § 1915A in the same manner as an 'ordinary 12(b)(6) dismissal,' so our review is de novo."). Therefore, additional screening under § 1915A is not required when the Court must already analyze the Defendants' Motions to Dismiss under Rule 12(b)(6). Thus, the Defendants' requests for additional § 1915A screening are denied.

## II. Paragraphs 53 to 65 and 71 to 76 of the Amended Complaint

In both Motions to Dismiss (Docs. 121, 126), the Defendants argue that Paragraphs 53 to 65 and 71 to 76 of Plaintiff Brown's Amended Complaint should be stricken because they are barred by the statute of limitations. (*See* Doc. 121, pp. 3–4; Doc. 126, pp. 3–4). The relevant sections of Brown's Amended Complaint discuss a 2007 class action lawsuit filed in the Central District of Illinois. (Doc. 120, ¶ 54 (citing *Rasho v. Baldwin*, No. 07-cv-1298-MMM (C.D. Ill.)). Plaintiff Brown argues that the Defendants were aware that there were issues with the mental health care offered at Menard specifically because of this lawsuit. (*See* Doc. 120, ¶¶ 53–65, 71–76). The

Defendants argue that the instant lawsuit only concerns Plaintiff Brown's missed medications in October 2021 and that he "brings no allegation about specific relationship with that class action lawsuit besides a general allegation that the 'systemic problems' identified in that class action lawsuit 'were the moving force behind the actions and omissions of the mental health professionals who interacted with Mr. Brown at Menard in October 2021.'" (Doc. 121, p. 3 (quoting Doc. 120, ¶ 64)).

Brown argues that the new Amended Complaint "did not add new deliberate indifference claims against Defendants Crain, Wills, Morris, Lawrence, Brand, Reister, and Martin; it merely elaborated on the factual basis of the existing claims" and that "it did not create any new defenses or objections that Defendants could not have raised before." (Doc. 129, p. 3). He argues that these paragraphs relate back to the original complaint, that these additional facts "belong to a common core of operative facts," and that "Defendants can hardly argue that Mr. Brown's amendments resulted in unfair surprise." (Doc. 130, p. 4). Brown insists that "Defendants misunderstand Mr. Brown's First Amended Complaint" because he "does not set out any new legal allegations that relate back to the *Rasho* litigation," instead pleading "an expansion of facts already raised regarding Defendants' participation in and knowledge of the *Rasho* litigation, and in maintaining the constitutionally inadequate mental healthcare system that was the subject of *Rasho*." (Doc. 129, p. 4).

This Court does not find the Defendants' arguments regarding the statute of limitations vis-à-vis the *Rasho* litigation compelling here. Plaintiff Brown is not bringing new claims in the paragraphs at issue in the Amended Complaint; he is

simply providing factual background for his renewed claims against the Defendants, details that were lacking in his original *pro se* Complaint. (*See* Doc. 1). Moreover, this Court can certainly take judicial notice of the *Rasho* litigation in accordance with Federal Rule of Evidence 201; this is not what is at issue here, however. Now that Plaintiff Brown is represented by counsel, they are attempting to provide additional context to Brown's claims, including those dismissed at this Court's preliminary review of his *pro se* petition. (*See* Doc. 20). Brown did not have the benefit of licensed attorneys to assist with the drafting of his initial Complaint. While Plaintiff's counsel of record wishes to back up their client's claims with facts (a Rule 8 requirement), there is no reason to analyze the applicability of the *Rasho* litigation at this stage of the case. Should Plaintiff Brown wish this Court to take judicial notice of Rasho and/or argue for its applicability at summary judgment or at trial, Plaintiff's counsel is certainly able to do so. However, this Court does not see any reason to adjudicate whether or not such details are permitted in the Amended Complaint; put another way, neither party has indicated that they wish for the pending 12(b)(6) Motions to be converted into motions for summary judgment.

Construing Brown's Amended Complaint in the light most favorable to him, it is reasonable to assume the institutional defendants would be aware of the *Rasho* litigation saga and its impact on the exercise of their duties. Brown need not prove at this stage of litigation that they were, indeed, aware of *Rasho* and its effects—he need only allege facts that create a narrative that "holds together." *Swanson*, 614 F.3d at 404. Therefore, the Defendants' request to strike Paragraphs 53 to 65 and 71 to 76 is denied.

### III. Individual Claims

The Defendants next argue that the following claims should be dismissed: the Eighth Amendment deliberate indifference claims against Drs. Poteat and Babich (Count One); the Eighth Amendment failure to protect claims against Wills, Crain, and Dr. Poteat (Count Two); the state law institutional negligence claim against Wexford (Count Four); the state law medical malpractice claims against Drs. Reister, Poteat, and Babich (Count Five); and the state law medical malpractice *respondeat superior*/vicarious liability claim against Wexford (Count Six) (*See* Docs. 120, 121, 126).

### A. Count One – Eighth Amendment Deliberate Indifference

"A prison official violates the Eighth Amendment's bar against cruel and unusual punishment if she displays 'deliberate indifference to serious medical needs of prisoners.'" *Williams v. Erickson*, 962 F. Supp. 2d 1038, 1041 (N.D. Ill. 2013) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Such claims have "both an objective and a subjective element: (1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety." *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006) (citing *Matos ex. rel. Matos v. O'Sullivan*, 335 F.3d 553, 556 (7th Cir. 2003)). "A medical need is considered objectively serious if it has been diagnosed by a physician as requiring treatment or if it is 'so obvious that even a lay person would recognize the necessity for a doctor's attention.'" *Williams*, 962 F. Supp. 2d at 1041 (citing

*Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005); *Farmer v. Brennan*, 511 U.S. 825, 834 811 (1994)).

Drs. Poteat and Babich argue that Brown insufficiently pleads that they were deliberately indifferent to his mental health requirements. (*See* Doc. 126, pp. 4–7). Poteat argues that she only saw Brown for his initial evaluative appointment on July 20, 2021 (*see id.*, p. 6) and Babich argues that "Plaintiff makes no direct allegations regarding treatment provided by Dr. Babich" and that Brown alleges instead "that Dr. Babich maintained an 'inadequate mental health care system at Menard.'" (*Id.* (citing Doc. 120, ¶ 53)). Brown argues in opposition that he has adequately stated claims for deliberate indifference against both Poteat and Babich because he sent Poteat grievances and because Babich should have been on notice of issues with inmate mental health care due to the *Rasho* litigation discussed *supra*. (*See* Doc. 130, pp. 10–12).

Notably, Poteat and Babich discuss the standard for deliberate indifference claims in detail. (*See* Doc. 126, p. 5). However, they predominately cite to cases decided at *summary judgment*, not at the Rule 12(b)(6) motion to dismiss stage. (*See id.* (citing *Rosario v. Brawn*, 670 F.3d 816, 821–22 (7th Cir. 2012) (appeal of district court's grant of summary judgment); *Garvin v. Armstrong*, 236 F.3d 896 (7th Cir. 2001) (same); *Walker v. Peters*, 233 F.3d 494 (7th Cir. 2000) (same); *Johnson v. Doughty*, 433 F.3d 1001 (7th Cir. 2006) (same); *Snipes v. DeTella*, 95 F.3d 586 (7th Cir. 1996); *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (appeal of district court's grant of judgment as a matter of law); *Thomas v. Dart*, 39 F.4th 835 (7th Cir. 2022) (appeal of denial of motion to amend complaint)). Brown is not required to fully brief

and argue his case at this stage—he is only required to adequately plead his claims. It is undisputed that Poteat was the psychiatrist overseeing Brown's mental health treatment, even if she only saw him in person for his initial intake. Additionally, it would appear that Babich was responsible for the mental health treatment program as the Southern District Regional Director for Wexford. (*See* Doc. 130, pp. 9–12). Brown's significant history of self-harm and suicide attempts (discussed *supra*) clearly show a serious medical need and, taking inferences in Brown's favor, is it plausible to assume that Poteat and Babich were aware of that need based on Brown's mental health history. Poteat and Babich's arguments are more appropriate at the summary judgment stage and do not move the dial here. Brown has sufficiently stated a claim for deliberate indifference against Poteat and Babich. These claims shall move forward into discovery.

**B. Count Two – Eighth Amendment Failure to Protect**

"A failure to provide protection constitutes an Eighth Amendment violation only if deliberate indifference by prison officials to a prisoner's welfare effectively condones the harm by allowing it to happen." *Eagan v. Dempsey*, 987 F.3d 667, 693 (7th Cir. 2021) (citing *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010)). The plaintiff "must demonstrate that the prison officials knew of and disregarded a serious risk to his health or safety." *Id.* at 694. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Farmer*, 511 U.S. at 837). Additionally, "an official's failure to alleviate a significant risk that he should have

perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* (quoting *Farmer* at 838).

The Defendants argue that the Eighth Amendment failure to protect claims against Wills and Crain (Doc. 121) and against Dr. Poteat (Doc. 126) should be dismissed. Wills and Crain dispute that they had any knowledge of Brown's risk of self-harm via Brown's grievances. (*See* Doc. 121, pp. 5–7). Poteat claims that same. (Doc. 126, pp. 7–8). Brown insists that Wills, Crain, and Poteat were aware of the imminent risk of self-harm via these same emergency grievances. (*See* Doc. 129, pp. 9–11; Doc. 130, pp. 10–11). Additionally, Brown's Amended Complaint details his long history of self-harm and suicide attempts. (*See* Doc. 120).

As discussed *supra*, Brown need not prove his allegations at this stage. See *Lindsey v. Hoem*, 799 F. App'x 410, 413 (7th Cir. 2020) (citing *Sanders v. Melvin*, 873 F.3d 957, 960 (7th Cir. 2017)). As the Seventh Circuit has cautioned, "[e]*verythin*g a litigant says in support of a claim is self-serving, whether the statement comes in a complaint, an affidavit, a deposition, or a trial. Yet self-serving statements are not necessarily false; they may be put to the test before being accepted, but they cannot be ignored." *Sanders*, 873 F.3d at 960. Reading the Amended Complaint in this light most favorable to Brown, this Court holds that he has plausibly stated a claim for failure to protect against Defendants Wills, Crain, and Poteat. Should Brown's claims ultimately prove to be fruitless, they will be dismissed at summary judgment.

**C. Count Four – Illinois State Law Institutional Negligence**

"Illinois law recognizes an administrative and managerial duty on the part of a hospital to review and supervise the treatment of its patients." *Williams*, 962 F.

Supp. 2d at 1044 (citing *Advincula v. United Blood Servs.*, 678 N.E.2d 1009, 1023 (Ill. 1996)). Wexford asserts that:

> To sustain an action for medical negligence, plaintiff must show: "(1) the standard of care in the medical community by which the physician's treatment was measured; (2) that the physician deviated from the standard of care; and (3) that a resulting injury was proximately caused by the deviation from the standard of care."

(Doc. 126, pp. 8–9 (quoting *Neade v. Portes*, 739 N.E.2d 496, 502 (Ill. 2000)). They argue that Brown "has failed to make any of the aforementioned allegations against Wexford" and that his "allegations appear to be that of a traditional negligence claim." (*Id.*, p. 9). Brown argues that he has "far exceeded his pleading requirements to state a claim for institutional negligence." (Doc. 130, p. 14 (citing *Williams v. Erickson*, 962 F. Supp. 2d 1038, 1044 (N.D. Ill. 2013)).

In *Williams*, The Seventh Circuit ruled that the plaintiff "allege[d] that Wexford did an unreasonable job of selecting, staffing and supervising its employees. This is sufficient to state a claim under Illinois law." 962 F.Supp.2d at 1044. The same is true here—Brown has sufficiently alleged that "Wexford, because of its close involvement in the *Rasho* litigation, knew that its mental health programs were dangerously understaffed, that patients on psychotropic medication were inadequately monitored, and that the mental health needs of patients on crisis watch were not addressed." (Doc. 130, p. 14 (citing Doc. 120, ¶ 58)). He has sufficiently stated a claim against Wexford—this claim also survives Wexford's attempt to dismiss it.

**D. Counts Five and Six – Illinois State Law Medical Malpractice**

In accordance with Illinois law, a plaintiff must "show that the physicians' negligent failure to comply with the standard of care proximately caused [the

plaintiff's] injury." *Miranda v. County of Lake*, 900 F.3d 335, 348 (7th Cir. 2018) (citing *Sullivan v. Edward Hosp.*, 806 N.E.2d 645 (Ill. 2004)). "In Illinois, proximate cause 'must be established by expert testimony to a reasonable degree of medical certainty.'" *Id.* (citing *Morisch v. United States*, 653 F.3d 522, 531 (7th Cir. 2011) (citation omitted)).

First, Plaintiff Brown has agreed to voluntarily dismiss the state law medical malpractice claim against Defendant Reister. (*See* Doc. 129, p. 12). For this reason, this claim shall be dismissed without prejudice without any additional discussion.

Drs. Poteat and Babich argue that Brown's medical malpractice claims against them are barred by the two-year statute of limitations and the four-year statute of repose imposed by Illinois law. (*See* Doc. 126, p. 10 (citing 735 ILL. COMP. STAT. 5/13-212; *Augutis v. United States*, 732 F.3d 749, 752–53 (7th Cir. 2013)). They argue that Brown "brings the medical malpractice claim against Dr. Babich or Dr. Poteat for the first time in his Amended Complaint on March 24, 2025" and that these claims cannot relate back to the filing date of the original Complaint (January 12, 2023). (*Id.*). Curiously, Brown does not address the claims against Dr. Poteat in his Response, nor does he address the arguments that his claims are barred by the applicable statutes of limitation and repose. (*See* Doc. 140, pp. 14–15). Instead, he argues that Babich owed a duty of care to him, even though he was the Southern District Regional Director for Wexford and not Brown's treating physician. (*See id.*, p. 15).

Regarding the Defendants' statute of limitations argument, this Court is not convinced. *Augutis* involved an *initial* complaint filed more than five years after the alleged malpractice occurred. *See* 732 F.3d at 754. Moreover, the Seventh Circuit

states that an "action" is a new case filed by an initial complaint. *See id.* ("Augutis briefly suggests that his administrative claim was an 'action' within the meaning of section 13–212, but that is not what the word means in this context. An action must be filed in a court, not with a federal agency. *See* 735 ILCS 5/2–201(a) ("Every action, unless otherwise expressly provided by statute, shall be commenced by the filing of a complaint.")). Brown filed his initial Complaint on January 12, 2023, less than two years after the alleged injury occurred in October and November 2021. (*See* Doc. 1; Doc, 126, p. 10). Moreover, if the date of injury is October or November 2021, Brown had until October 2025 at the earliest to file medical malpractice claims against Poteat and Babich to avoid the four-year statute of repose. The Amended Complaint was filed on March 24, 2025, far below this limit. (*See* Doc. 120). Additionally, while Poteat and Babich argue (without citing any caselaw) that Brown's medical malpractice claims "cannot relate back to the date he filed his original complaint," (Doc. 126, p. 10), Federal Rule 15(c) expressly states that:

> An amendment to a pleading relates back to the date of the original pleading when: (A) the law that provides the applicable statute of limitations allows relation back; [or] (B) the amendment *asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading . . . .*

*Id.* (emphasis added). Clearly, the same conduct (Poteat and Babich's conduct with regard to Brown's mental health crisis following the six days during which his medication was not provided) is at issue here.

Wexford also argues that it cannot be held liable under § 1983 and, thus, that Brown's medical malpractice claim against them must be dismissed. (*See* Doc. 126, pp. 11–12 (citing *Perez v. Fenoglio*, 792 F.3d 768, 780 (7th Cir. 2015); *Shields v. Ill.*

*Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014); *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978); *Armbruster v. Wexford Health Sources, Inc.*, 16-cv-544-MRJ, 2017 WL 2619032, at *3 (S.D. Ill. June 16, 2017))). They argue that this claim should be pursued as a *Monell* claim seeking liability due to Wexford's "policies and practices," as Brown has already pleaded in Count Three. (*Id.*, p. 12). Brown argues in opposition that Wexford "did not read *Armbruster* carefully. There, the court recognized that 'Plaintiff may pursue *respondeat superior* against Defendant Wexford as a theory of medical malpractice for the acts of [its employee].'" (Doc. 130, p. 16 (citing *Ambruster*, 2017 WL 2619032, at *8)). Brown states (in a footnote) that he "recognizes that the court in *Armbruster* dismissed the *respondeat superior* claim against Wexford because '*respondeat superior*, in and of itself, is not a separate claim, but merely a theory of recovery.'" (*Id.*, p. 16 n.2 (quoting *Armbruster* at *3)). "But there, unlike here, the plaintiff had raised 'a distinct claim of *respondeat superior* liability apart from [his] malpractice claim." (*Id.* (quoting *Armbruster* at *3)). Brown, in the alternative, seeks leaves to add Wexford to Count Five.

However, there is a separate issue to address—one which neither party argued nor briefed. "Under Illinois law, a plaintiff seeking damages for 'medical, hospital, or other healing art malpractice' must attach to his complaint either (1) an affidavit confirming that he has reviewed the facts of the case with a health care professional and that the professional believes that there is a 'reasonable and meritorious cause for the filing of such action,' as well as a copy of the professional's written report on the case, or (2) an affidavit stating an acceptable reason why such an opinion and report could not be obtained." *Hahn v. Walsh*, 762 F.3d 617, 628 (7th Cir. 2014) (citing

735 ILL. COMP. STAT. 5/2–622(a)). The Seventh Circuit confirmed that this same requirement applies to state law medical malpractice claims brought in federal court in accordance with *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). *See Hahn*, 762 F.3d at 629 (citing the same). *Hahn* made clear, however, that plaintiffs should be granted leave to amend to add such an affidavit. *See* 762 F.3d at 633–34 ("First, our cases and Illinois cases suggest that when a claim is dismissed for failure to include a section 2–622 affidavit and report, the dismissal should be without prejudice. The Appellate Court of Illinois has held expressly that when a plaintiff raises a claim that implicates section 2–622 but fails to include an affidavit and report, the plaintiff should have the opportunity to amend her complaint before it is dismissed with prejudice.").

Therefore, Counts Five and Six of Brown's Amended Complaint must be dismissed without prejudice. While this Court will provide Brown with leave to amend, this Court cautions the parties that additional delays in this litigation will not be tolerated. This case was filed in January 2023—after two-and-a-half years of litigation, the parties should make every effort to move this case toward a final resolution as expeditiously as is possible.

## CONCLUSION

For the reasons set forth above, the Motion to Dismiss filed by Defendants Brand, Cooper, Crain, Lawrence, Morris, Reister, and Wills (Doc. 121) is **GRANTED in part and DENIED in part**. Additionally, the Motion to Dismiss filed by Defendants Babich, Poteat, and Wexford (Doc. 126) is **GRANTED in part and DENIED in part**. Counts Five and Six of Plaintiff Allen Brown, Jr.'s Amended

Complaint are **DISMISSED without prejudice**. Plaintiff Brown shall file a second amended complaint no later than June 23, 2025.

**IT IS SO ORDERED.**

**DATED:  June 9, 2025**

**s/ *Stephen P. McGlynn***
**STEPHEN P. McGLYNN**
**U.S. District Judge**
