IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALLEN BROWN, Jr., **Plaintiff,** v. WEXFORD HEALTH SOURCES, INC., et al., **Defendants.** | Case No. 23-CV-00107-SPM |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before this Court are two motions: a Motion for Leave to File Amended Complaint filed by Plaintiff Allen Brown, Jr. (Doc. 158) and a Motion to Dismiss filed by Defendants Rob Jeffreys, William Puga, and Melvin Hinton. (Doc. 164). Having been fully informed of the issues presented, Brown's Motion is **DENIED** and the Defendants' Motion to Dismiss is **GRANTED**.

### Relevant Factual And Procedural Background

Plaintiff Allen Brown, Jr. is an individual in the custody of the Illinois Department of Corrections ("IDOC"). (Doc. 1). He was incarcerated at Menard Correctional Center from July 9, 2021 to May 19, 2022. (*Id.*, ¶ 1). The crux of his claims involves six days during 2021 when he was not provided his psychotropic medication while incarcerated at Menard Correctional Center. (Doc. 120, ¶¶ 1, 40–52).

Brown has been on "enforced medication status"—meaning that his psychotropic medications are forcibly administered to him if he will not take them

himself—since July 2018. (*See id.*, ¶ 19). When Brown first arrived at Menard on July 10, 2021, Defendant Poteat noted that Brown had "a history of 'repeated self-injurious behaviors' and many suicide attempts, including a recent attempt in December 2020 while in custody at Joliet Treatment Center." (*Id.*, ¶ 20). Brown "had multiple old scars and recently inserted metal paperclips and staples into his arms and legs" and was determined to be "at moderate risk of suicide and at high risk of aggressive behavior." (*Id.*). Additionally, "[w]ithin a week of his evaluation with Defendant Poteat, Mr. Brown had swallowed several screws and was placed on continuous crisis watch as a result." (*Id.*, ¶ 21). During time he was at Menard, Mr. Brown was diagnosed with "bipolar disorder, PTSD, borderline personality disorder, antisocial personality disorder, and substance use disorder." (*Id.*, ¶ 20). Brown spent some forty days on crisis watch, from August 26, 2021 to October 6, 2021. (*Id.*, ¶ 31). Subsequently, on October 16–19 and 28–29, Brown's psychotropic mediations were not administered to him. (*Id.*, ¶ 40). On October 28, "Mr. Brown inserted a screw into his penis, punched the wall, and cut his testicle." (*Id.*, ¶ 43). He later cut his leg and ingested "foreign bodies from a broken fan" on or around November 3 (*id.*, ¶ 45) and inserted a foreign object into both eyes on November 12 (*id.*, ¶ 47). He was treated at St. Louis University Hospital after both incidents. (*Id.*, ¶¶ 46–47)

Brown filed his initial *pro se* Complaint on January 12, 2023; his Complaint listed eighteen named defendants and alleged various claims pursuant to 42 U.S.C. § 1983. (*See* Doc. 1). This Court conducted preliminary review in accordance with 28 U.S.C. § 1915A on September 25, 2023. (Doc. 20). The Court permitted Brown's Eighth Amendment deliberate indifference claims against Wexford, Crain, Martin,

Morris, Lawrence, Poteat, Wills, Reister, and Nurse Jane Doe for failure to provide him with his required medication on October 16, 17, 18, 19, 28, and 29, 2021 to proceed into discovery. (*See* Doc. 20, p. 5). Defendants Cooper, Lawrence, Morris, and Reister filed a Motion for Summary Judgment on exhaustion of administrative remedies on September 9, 2024 (Doc. 94); this Court denied the Motion on March 6, 2025 (Doc. 112) and set a Scheduling Order on the same day (Doc. 113).

On October 4, 2024, Attorney Nicole Schult of Uptown People's Law Center in Chicago entered an appearance as counsel of record for Plaintiff Brown.[1] (*See* Doc. 99). Plaintiff Brown filed a Motion to Amend his Complaint on March 21, 2025 (Doc. 118), which this Court granted on March 24, 2025 (Doc. 119). (*See* Doc. 120). The Defendants filed a Motion to Dismiss on April 4, 2025 (Doc. 121); this Court granted it in part and denied it in part on June 9, 2025 (Doc. 137) and subsequently granted a Motion for Reconsideration filed by Brown on June 17, 2025. (*See* Docs. 138, 139). The operative Second Amended Complaint was filed on June 18, 2025. (Doc. 140). The Second Amended Complaint alleges the following claims: (1) Eighth Amendment deliberate indifference against Defendants Angela Crain, Kimberly Martin, Carrie Morris, Rob Jeffreys, Advup Lawrence, Thena Poteat, Anthony Wills, Lewis Shicker, Nicole Brand, Melissa Ogle, Shane Reister, William Puga, Melvin Hinton, and Glen Babich; (2) Eighth Amendment failure to protect against Defendants Wills, Poteat, and Crain; (3) Eighth Amendment deliberate indifference against Wexford Health Sources; (4) Illinois state law institutional negligence against Wexford; (5) Illinois

---

[1] Attorneys Shireen Jalali-Yazdi and Ian McCollum subsequently entered appearances on behalf of Brown. (*See* Docs. 109, 111).

state law medical malpractice against Defendants Poteat and Babich; and (6) Illinois state law medical malpractice against Wexford based in respondeat superior. (*See id.*).

In his Motion, Brown seeks to amend the operative Second Amended Complaint to name Illinois Department of Corrections Medical Director Dr. Steve Bowman in place of Dr. Louis Shicker; Brown insists that "Louis Shicker was named instead of Steven Bowman only because of mistaken identity" and that "[t]he facts to support the claim against Steven Bowman have therefore already been pleaded and the proposed amendment introduces no new facts to the case." (Doc. 158, p. 3). This Court previously granted Brown's Motion to Substitute Bowman for Shicker on the docket. (*See* Docs. 156, 157). Defendants Nicole Brand, Rebecca Cooper, Angela Crain, Melvin Hinton, Rob Jeffreys, Lawrence, Kimberly Martin, Carri Morris, Melissa Ogle, William Puga, Shane Reister, and Anthony Wills oppose and object to Brown's Motion. (Doc. 161). Brown filed a Reply. (Doc. 162).

While Brown's Motion for Leave to Amend was still pending, Defendants Jeffreys, Puga, and Hinton filed the instant Motion to Dismiss (Doc. 163); they argue that the claims against them must be dismissed due to the statute of limitations and Plaintiff's failure to allege their personal involvement. (*Id.*). Brown filed a Response (Doc. 171), to which the Defendants replied (Doc. 172).

## APPLICABLE LAW AND LEGAL STANDARDS

Federal Rule of Civil Procedure 15 governs the amendment of pleadings and provides that courts "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). Nonetheless, "[a] district court may deny leave to file an

amended complaint in the case of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment.'" *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) (citation modified) (quoting *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007)). "Ultimately, the decision to grant or deny a motion to file and amended pleading is a matter purely within the sound discretion of the district court." *McDaniel v. Loyola Univ. Med. Ctr.,* 317 F.R.D. 72, 76 (N.D. Ill. 2016) (citing *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008)).

Delay alone may not prove sufficient grounds to warrant denial of leave to amend a complaint; "rather, the degree of prejudice to the opposing party is a significant factor in determining whether the lateness of the request ought to bar filing." *Dubicz v. Commonwealth Edison Co., 377* F.3d 787, 792 (7th Cir. 2004) (internal quotations omitted) (citing *Doherty v. Davy Songer, Inc.*, 195 F.3d 919, 927 (7th Cir. 1999)). Nonetheless, the longer the delay, the greater presumption against granting leave to amend. *McDaniel v. Loyola Univ. Med. Ctr.*, 317 F.R.D. 72, 77 (N.D. Ill. 2016) (citing *King v. Cooke*, 26 F.3d 720, 723 (7th Cir. 1994)). Undue delay is most likely to result in undue prejudice when a combination of factors, including delay in proceedings without explanation, no change in the facts since filing of the original complaint, and new theories that require additional discovery, occur together. *McDaniel v. Loyola Univ. Med. Ctr.*, 317 F.R.D. 72, 77 (N.D. Ill. 2016) (citing *J.P. Morgan Chase Bank, N.A. v. Drywall Serv. & Supply Co.*, 265 F.R.D. 341, 347 (N.D. Ind. 2010)). It is the party seeking to amend that "has the burden of showing that

undue prejudice will not result to the non-moving party." *Id.* (citing *King*, 26 F.3d at 724). "If the moving party fails to provide any explanation for not filing its amendment sooner or if the explanation it provides is inadequate, that will weigh towards denying leave to amend." *J.P. Morgan Chase Bank, N.A.*, 265 F.R.D. at 347 (citing *Sanders, et al. v. Venture Stores, Inc.*, 56 F.3d 771, 775 (7th Cir. 1995)).

Additionally, in analyzing a motion to dismiss for failure to state a claim filed pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must determine whether or not the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court of Appeals for the Seventh Circuit has explained that "'[p]lausibility' is not a synonym for 'probability' in this context, but it asks for 'more than a sheer possibility that a defendant has acted unlawfully.'" *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) (quoting *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [the] [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

District courts are required by the Court of Appeals for the Seventh Circuit to review the facts and arguments in Rule 12(b)(6) motions "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). "The purpose of a motion to dismiss is to test the sufficiency of the

complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

## ANALYSIS

### I.  Claims Against Defendant Bowman

In his Motion (Doc. 158), Plaintiff Brown seeks to amend the operative Second Amended Complaint (Doc. 140) to substitute Dr. Steven Bowman for Dr. Louis Shicker as the IDOC Medical Director. Brown insists that Rule 15(c)(1)(C) permits this modification, as the claims relate back to the original Complaint in this case. (*Id.*, p. 3).

In response, the Defendants insist that the substitution of Bowman for Shicker and the amendment of the operative Complaint is barred by the two-year statute of limitations, that Plaintiff cannot make use of Federal Rule of Civil Procedure 15(c)(1)(C) to relate his amendment back to the date of his original pleading, and that Plaintiff did not serve Defendant Shicker (or Defendants Hinton, Puga, and Jeffreys, *see infra* Section II) within the 90-day limit pursuant to Federal Rule of Civil Procedure 4(m). (*See* Doc. 161).

In his Reply, Brown insists that "[t]he notice required by rule 15(c)(1)(C) 'may be inferred based on either the identity of interest between the old and new parties or by the fact that they share an attorney.'" (Doc. 162, p. 2 (quoting *Kazmer v. Bayer Healthcare Pharms., Inc.*, No. 2:07-CV-112-TS, 2007 WL 4148003, at *5 (N.D. Ind. Nov. 19, 2007)). He argues that the fact that Defendants Nicole Brand, Rebecca Cooper, Angela Crain, Melvin Hinton, Rob Jeffreys, Lawrence, Kimberly Martin, Carri Morris, Melissa Ogle, William Puga, Shane Reister, and Anthony Wills share

the same attorney means that Bowman had timely notice of the claims against him. (*Id.* (quoting *Davenport v. Dovgin*, 545 F. App'x 535, 539 (7th Cir. 2013); *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186 (3d. Cir. 2001))). Brown alleges that the fact that "John Doe Chief of Medical Services" was previously named as a Defendant and the fact that discovery requests were submitted to Shicker also constituted sufficient notice and that there is sufficient "identity of interest" among the administrators listed in this lawsuit. (*Id.*, pp. 2–4). He also insists that "procedural hurdles" prevented the timely addition of the "administrative defendants" to this case. (*Id.*, p. 4).

First, Defendants are correct that Plaintiff has provided no justification for why the case of "mistaken identity" with regard to Shicker was not identified before now when Plaintiff's counsel first entered an appearance in October 2024 (Doc. 99; *see* Docs. 109, 111) and Amended Complaints naming Shicker were filed on March 24, 2025 (Doc. 120) and June 18, 2025 (Doc. 140). A Google search shows that Dr. Bowman is, indeed, the current IDOC Medical Director. *See* AGENCY MEDICAL DIRECTOR, ILL. DEPT. CORR., https://idoc.illinois.gov/aboutus/agencymedicaldirector.html [https://perma.cc/PQ89-D6ST] (last visited Nov. 19, 2025). Additionally, Seventh Circuit caselaw indicates that Shicker was no longer IDOC Medical Director as of March 23, 2020. *See Orr v. Shicker*, 953 F.3d 490, 494 (7th Cir. 2020) ("In November 2016, Plaintiffs filed an amended complaint, naming IDOC, Wexford (again), IDOC's medical director (initially Dr. Michael Puisis, who was later succeeded by Dr. Louis Shicker and then Dr. Steven Meeks), and several other doctors as defendants.").

Second, Plaintiff cannot use the "shared attorney method" to impute notice to Bowman. *See Davenport*, 545 F. App'x at 539. In *Davenport*, the Seventh Circuit affirmed the district court's denial of the plaintiff's motion to amend her complaint, holding that the shared attorney method did not apply "because notice of the suit was not imputed to the proposed defendants through the shared attorney within 120 days of Davenport's filing of her complaint." *Id*. Additionally, the "shared attorney did not begin representing the proposed defendants until Davenport moved to amend the complaint, almost two years after she filed suit." Here, Defendants' counsel of record began representing Defendant Bowman on November 3, 2025 (Doc. 170) and had never previously entered a notice of appearance on behalf of Shicker or Bowman. Additionally, Plaintiff seeks to add Bowman to the lawsuit almost *three years* after his original Complaint was filed, clearly beyond the 120-day limit and beyond the two-year statute of limitations, since the alleged incident occurred in November 2021. (*See* Doc. 161, p. 2). In that vein, Plaintiff cannot make use of the "identity of interest" method to impute notice to Bowman, either, because he has not provided any evidence or reason to believe that Defendants' counsel of record represented or contacted Bowman regarding this lawsuit. *See Garvin v. City of Philadelphia*, 354 F.3d 215, 227 (3d Cir. 2003).

Moreover, Plaintiff has not provided a reason as to why Shicker, Bowman, or the IDOC Medical Director in its official capacity were not served after the First Amended Complaint was filed in March 2025. (Doc. 140). Brown admits that it required Defendants' counsel of record informing him on August 28, 2025 that Shicker had *not* been served for him to take action. (Doc. 156, p. 1). Additionally,

while Brown did indeed assert claims against "John Doe Chief of Medical Services" in his original *pro se* Complaint filed on January 12, 2023 (Doc. 1), this Court *terminated* Shicker as IDOC Medical Director as a named Defendant at preliminary review on September 25, 2023 (Doc. 20). Brown later added Shicker as a Defendant on March 25, 2025 *after* Plaintiff retained counsel (*see* Doc. 140), meaning it is wholly unreasonable for Bowman to believe that he would be named in this lawsuit if *he was never previously served*. This Court cannot ignore Defendants' statement that "individuals in custody are particularly litigious," that "IDOC employees are inundated with lawsuits," and that "it is inconceivable that Dr. Bowman would know which of his colleagues were being sued for what." (Doc. 161, p. 4). This is undoubtedly true—this Court can attest to the constant deluge of lawsuits filed daily in this District. Notably, according to internal statistics compiled on November 19, 2025, 1059 civil cases have been filed in this District in 2025, with 53 filed this month and 5 filed yesterday alone—a large proportion of these cases are civil rights lawsuits filed by p*ro se* prisoners.

  This Court also notes that, even though this Court has not ruled on Brown's Motion to Leave to Amend, Brown executed service of process on Bowman, anyway. (*See* Doc. 169). The operative Second Amended Complaint (Doc. 140) lists Shicker as a Defendant, not Bowman, so it is unclear which version of the Complaint was served on Bowman in the first place. (*See id.*).

  Thus, while Plaintiff Brown insists that justice requires the amendment of his operative pleading in line with Rule 15(a)(2) and that dismissal of his claims against Bowman would be a "windfall" (Doc. 162, p. 4), this Court holds that Brown has not

met his burden to prove that undue prejudice will not result to Defendant Bowman when this case has already been in discovery since March 5, 2025. (See Doc. 113); *see also McDaniel*, 317 F.R.D. at 77. This Court holds that Brown's unexcused delay in both determining the identity of the IDOC Medical Director and serving him means that his claims against Dr. Bowman must be dismissed, especially since he has already been provided with multiple opportunities to amend his pleadings. Therefore, Brown's Motion shall be denied, Brown's claims against IDOC Medical Director Dr. Bowman shall be dismissed with prejudice, and Dr. Bowman shall be terminated from this lawsuit.

## II.    Claims Against Defendants Jeffreys, Hinton, and Puga

First, Defendants Jeffreys, Hinton, and Puga argue that Plaintiff Brown has not met the conditions imposed by Rule 15(c)(1)(C) to relate the claims against them back to the date of filing of this lawsuit. (Doc. 164, p. 2). They insist that they were originally sued in their official capacities only, that they did not receive notice of this suit because the claims against them were dismissed at this Court's § 1915A review, and that they could not have known that this action was brought against them. (*Id.*, pp. 2–3). They also argue that Brown fails to state specific claims against them and that any claims for liability based on respondeat superior are prohibited in § 1983 lawsuits. (*Id.*, p. 4).

In opposition, Brown insists that Jeffreys, Hinton, and Puga are "original defendants and are not being substituted for mistaken parties" (Doc. 171, p. 2 (footnote omitted)), that these Defendants waived any challenge to service of process when they executed waivers of service (*id.*), and that any delay in service is either

justified by good cause or is excusable neglect (*id.*, p. 3). Regarding the sufficiency of his claims against Jeffreys, Hinton, and Puga, Brown argues that he is not alleging claims based on respondeat superior but rather is arguing "that Defendants themselves are directly liable for consciously maintaining an inadequate mental healthcare system that posed a substantial risk of harm to IDOC prisoners." (*Id.*, p. 5 n.2 (citing Doc. 140, ¶¶ 53–65)). Brown heavily relies on the Seventh Circuit's opinion in *Cleveland-Perdue v. Brutsche*, 881 F.2d 427 (7th Cir. 1989) in arguing that these Defendants "were personally aware from their participation in the *Rasho* litigation that IDOC's mental health care program suffered from a number of systemic problems, including a lack of medical staff, that posed significant dangers to prisoners with mental illness." (Doc. 171, p. 7 (quoting Doc. 140, ¶ 56)). Brown also argues that he has met the Rule 15(c)(1)(C) requirements to relate the claims against Jeffreys, Hinton, and Puga back to the filing of this lawsuit, insisting that "Defendants' counsel has been aware at least since he filed his appearance on October 17, 2023 that each of them were named Defendants." (*Id.*, p. 9 (citing Doc. 34)).

Recall that Defendants first bring their arguments related to improper service of Jeffreys, Puga, and Hinton in their Response to Brown's Motion. (*See* Doc. 161). They argue that there were not served within the 90 days required by Rule 4(m), insisting that waivers of service were not sent until August 29, 2025, some 158 days after Brown's First Amended Complaint was filed on March 24, 2025. (*See id.*, p. 3). However, Defendants' calculation of 158 days after filing of the First Amended Complaint on March 24, 2025 (Doc. 140) fails to mention that the Second Amended Complaint was filed on June 18, 2025 (Doc. 140), putting service within the 90 days

permitted by Rule 4(m). Defendants do not even mention the Second Amended Complaint in their Response.

Additionally, Rule 4(m)'s dismissal requirement is not mandatory—it is permissive, stating that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff— must dismiss the action without prejudice against that defendant *or order that service be made within a specified time.*" (emphasis added). Moreover, Hinton returned a waiver of service on September 11, 2025 (Doc. 150) and counsel entered an appearance on his behalf on September 17, 2025 (Doc. 154); Jeffreys returned a waiver of service on September 23, 2025 (Doc. 155) and counsel entered an appearance on his behalf on September 30, 2025 (Doc. 160); counsel of record entered an appearance for Puga on September 15, 2025 (Doc. 153) and Puga returned a waiver of service on October 29, 2025 (Doc. 168).

However, Jeffreys, Puga, and Hinton did file the instant 12(b) Motion within the required timeline (within 60 days if service is timely waived, *see* FED. R. CIV. P. 12(a)(1)(A)(i)). Brown offers only out-of-district cases to argue that execution of a service waiver constitutes waiver of objection to the sufficiency of service. (*See* Doc. 171, pp. 2–3 (citing *McGee v. Macon Cty. Sheriff's Dep't*, 2017 U.S. Dist. LEXIS 233598, at *4 (C.D. Ill. Apr. 10, 2017); *Beale v. Revolution Portfolio*, LLC, 07 C 6909, 2008 U.S. Dist. LEXIS 82482, at *5 (N.D. Ill. Oct. 16, 2008); *Foster v. Ghosh*, 11 C 5623, 2012 U.S. Dist. LEXIS 132587, at *5 (N.D. Ill. Sept. 14, 2012))). Moreover, while Brown construes Defendants' Motion to Dismiss as being brought pursuant to Rule 12(b)(5), the Defendants explicitly cite to Rule 12(b)(6) in their Motion. (*See* Doc. 164).

In the same vein as his arguments regarding Bowman's notice (or lack thereof), Brown again argues that defense counsel should have been aware that Jeffreys, Hinton, and Puga were named as Defendants when counsel entered his appearance on October 17, 2023. (Doc. 171, p. 9 (citing Doc. 34)). Once more, Brown does not include the fact that this Court *dismissed* the claims against Jeffreys, Hinton, and Puga at § 1915A preliminary review on September 25, 2023, *prior* to defense counsel's appearance on October 17, 2023. (Doc. 20). Jeffreys, Hinton, and Puga were never served in 2023 and Brown cannot rely on the fact that he named them in his initial Complaint. (Doc. 1). Moreover, Brown cannot claim the Defendants had notice of his claims when he did not attempt to notify them; *defense counsel* informed Brown's counsel that service had not been executed. (Doc. 171, p. 9).

Considering all of the above, this Court holds that Brown cannot relate his claims against Jeffreys, Hinton, and Puga back to the filing of his initial Complaint in this action in accordance with Rule 15(c)(1)(C). Additionally, this Court holds that Brown has not carried his burden to show that undue prejudice will not result to Defendants Jeffreys, Hinton, and Puga. *See McDaniel*, 317 F.R.D. at 77. Therefore, the claims against these Defendants shall be dismissed. The Court does not reach the question of whether the claims against these Defendants are sufficient in accordance with Rule 12(b)(6).

This Court notes that this case will have been pending for *three years* as of January 2026. This Court reminds the parties that their cooperation is essential in order to bring this suit to a final resolution on the merits as expeditiously as possible. The parties were already sternly warned on June 17, 2025 that modifications to the

operative Scheduling Order would not be permitted absent unforeseen circumstances. (*See* Doc. 139). This Court will not tolerate additional delay in the discovery or dispositive motions deadlines absent exceptional or emergent circumstances.

## Conclusion

Considering the above, Plaintiff Allen Brown, Jr.'s Motion for Leave to File Amended Complaint (Doc. 158) is **DENIED**. Additionally, Defendants Rob Jeffreys, William Puga, and Melvin Hinton's Motion to Dismiss (Doc. 164) is **GRANTED**. Brown's claims against Defendants Bowman, Jeffreys, Puga, and Hinton are **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to terminate Bowman, Jeffreys, Puga, and Hinton as named Defendants in this case.

**IT IS SO ORDERED.**

**DATED:  November 21, 2025**

**s/ *Stephen P. McGlynn***
**STEPHEN P. McGLYNN**
**U.S. District Judge**
