**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

ALLEN BROWN, Jr.,

        **Plaintiff,**

v.

WEXFORD HEALTH SOURCES,
INC., et al.,

        **Defendants.**

**Case No. 23-CV-00107-SPM**

## <u>MEMORANDUM AND ORDER</u>

**McGLYNN, District Judge:**

Pending before this Court are two motions filed by Plaintiff Allen Brown, Jr.:
a Motion to Compel (Doc. 178) and a Motion for Leave to File Additional Requests for
Production (Doc. 180). Having been fully informed of the issues presented, Brown's
Motion to Compel is **DENIED** and his Motion for Leave to File Additional Requests
for Production is **GRANTED**.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Allen Brown, Jr. is an individual in the custody of the Illinois
Department of Corrections ("IDOC"). (Doc. 1). He was incarcerated at Menard
Correctional Center from July 9, 2021 to May 19, 2022. (*Id.*, ¶ 1). The crux of his
claims involves six days during 2021 when he was not provided with his psychotropic
medication while incarcerated at Menard. (Doc. 120, ¶¶ 1, 40–52).

Brown has been on "enforced medication status"—meaning that his
psychotropic medications are forcibly administered to him if he will not take them
himself—since July 2018. (*See id.*, ¶ 19). When Brown first arrived at Menard on July

10, 2021, Defendant Poteat noted that Brown had "a history of 'repeated self-injurious behaviors' and many suicide attempts, including a recent attempt in December 2020 while in custody at Joliet Treatment Center." (*Id.*, ¶ 20). Brown "had multiple old scars and recently inserted metal paperclips and staples into his arms and legs" and was determined to be "at moderate risk of suicide and at high risk of aggressive behavior." (*Id.*). Additionally, "[w]ithin a week of his evaluation with Defendant Poteat, Mr. Brown had swallowed several screws and was placed on continuous crisis watch as a result." (*Id.*, ¶ 21). During time he was at Menard, Mr. Brown was diagnosed with "bipolar disorder, PTSD, borderline personality disorder, antisocial personality disorder, and substance use disorder." (*Id.*, ¶ 20). Brown spent some forty days on crisis watch, from August 26, 2021 to October 6, 2021. (*Id.*, ¶ 31). Subsequently, on October 16–19 and 28–29, Brown's psychotropic mediations were not administered to him. (*Id.*, ¶ 40). On October 28, "Mr. Brown inserted a screw into his penis, punched the wall, and cut his testicle." (*Id.*, ¶ 43). He later cut his leg and ingested "foreign bodies from a broken fan" on or around November 3 (*id.*, ¶ 45) and inserted a foreign object into both eyes on November 12 (*id.*, ¶ 47). He was treated at St. Louis University Hospital after both incidents. (*Id.*, ¶¶ 46–47)

Brown filed his initial *pro se* Complaint on January 12, 2023; his Complaint listed eighteen named defendants and alleged various claims pursuant to 42 U.S.C. § 1983. (*See* Doc. 1). This Court conducted preliminary review in accordance with 28 U.S.C. § 1915A on September 25, 2023. (Doc. 20). The Court permitted Brown's Eighth Amendment deliberate indifference claims against Wexford, Crain, Martin, Morris, Lawrence, Poteat, Wills, Reister, and Nurse Jane Doe for failure to provide

him with his required medication on October 16, 17, 18, 19, 28, and 29, 2021 to proceed into discovery. (*See* Doc. 20, p. 5). Defendants Cooper, Lawrence, Morris, and Reister filed a Motion for Summary Judgment on exhaustion of administrative remedies on September 9, 2024 (Doc. 94); this Court denied the Motion on March 6, 2025 (Doc. 112) and set a Scheduling Order on the same day (Doc. 113).

On October 4, 2024, Attorneys from Uptown People's Law Center in Chicago first entered appearances as counsel of record for Plaintiff Brown. (*See* Doc. 99). The operative Second Amended Complaint was filed on June 18, 2025. (Doc. 140). Plaintiff Brown alleges the following claims: (1) Eighth Amendment deliberate indifference against Defendants Angela Crain, Kimberly Martin, Carrie Morris, Advup Lawrence, Thena Poteat, Anthony Wills, Nicole Brand, Melissa Ogle, Shane Reister, and Glen Babich; (2) Eighth Amendment failure to protect against Defendants Wills, Poteat, and Crain; (3) Eighth Amendment deliberate indifference against Wexford Health Sources; (4) Illinois state law institutional negligence against Wexford; (5) Illinois state law medical malpractice against Defendants Poteat and Babich; and (6) Illinois state law medical malpractice against Wexford based in respondeat superior. (*See id.*).[1]

Brown filed the instant Motion to Compel on March 20, 2026 (Doc. 178); Defendants Babich, Poteat, and Wexford responded in opposition on April 1, 2026 (Doc. 179). Brown then filed the pending Motion to Leave to File Additional Requests for Production on April 2, 2026 (Doc. 180); none of the Defendants filed a response.

---

[1] This Court dismissed Plaintiff's claims against Defendants Bowman, Jeffreys, Puga, and Hinton on November 21, 2025. (*See* Doc. 172).

## APPLICABLE LAW AND LEGAL STANDARDS

Rule 26(b)(1) of the Federal Rules of Civil Procedure permits a party to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* In addition to being relevant, the discovery sought must be proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019) (citing FED. R. CIV. P. 26(b)(1)).

Federal Rule of Civil Procedure 37(a)(1) permits a party to "move for an order compelling disclosure or discovery" provided that the motion includes "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." This certification is also required by Local Rule 26.1(c)(2) and the Court's Case Management Procedures. Rule 37(b) provides that failure to comply with a discovery order issued by the court is a sanctionable offense, with potential sanctions including dismissal of the action in whole or in part, default judgment, or holding a party in contempt of court. *See* FED. R. CIV. P. 37(b)(2)(A).

## ANALYSIS

### I.    Motion to Compel (Doc. 178)

Plaintiff Brown's Motion to Compel (Doc. 178) involves Defendants Wexford, Babich, and Poteat's responses to Brown's interrogatories. Brown admits that "[c]ounsel for Mr. Brown issued these requests in accordance with FED. R. CIV. P. 33 and 34 but overlooked the limits set by this Court on the number of discovery requests each party was permitted to serve." (*Id.*, p. 3). Wexford responded to Brown's first set of interrogatories on June 27, 2025, but Brown subsequently reissued a second set of interrogatories that complied with this Court's Scheduling and Discovery Order (Doc. 113). (*See* Doc. 178, p. 3). Babich and Poteat responded to Brown's first set of interrogatories on July 28, 2025. (*Id.*). Brown states that Wexford responded to the second set of interrogatories on July 31, 2025 and that Brown reissued requests for production on August 1, 2025. (*Id.*). At this point, Brown, Wexford, Babich, and Poteat "corresponded over this issue numerous times" and held a meet and confer conference on September 4, 2025. (*Id.*, pp. 4–5). Brown insists that Wexford did not produce sufficient electronically stored information and that the parties have now reached an impasse regarding objections to Brown's interrogatories and requests for production. (*Id.*, pp. 5–12).

Brown insists that the "Wexford Defendants have engaged in a number of dilatory tactics, which has caused Plaintiff to seek two discovery extensions, prevented Plaintiff's counsel from preparing for depositions, and overall denied Plaintiff the efficient and fair use of the judicial process." (*Id.*, p. 13). He also argues that the Wexford Defendants "issued a new ESI proposal (the July 25 Proposal),

instead of redlining Plaintiff's June 25 Proposal," that "despite agreeing to send the

search yields for the 32 search terms in the August 15 Proposal, counsel for Wexford

Defendants sent the yields for only 20 search terms," and that "counsel for Wexford

Defendants missed agreed-upon deadlines to produce ESI and was non-responsive to

Plaintiff's counsel's requests for updates." (*Id.*, pp. 13–15). He also takes issue with

Wexford's responses to his written discovery requests, which he argues are inaccurate

or incomplete. (*Id.*, pp. 15–18). Brown also insists that Wexford must be ordered to

provide non-party protected health information. (*Id.*, pp. 18–19).

In opposition, Wexford, Babich, and Poteat blame Brown for the delays in

discovery, arguing that Brown "seeks Defendants to conduct duplicative work as a

fishing expedition, despite Defendants' extensive production." (Doc. 179, p. 2).

Wexford insists that Brown caused unnecessary delay and created confusion when

his first set of written discovery requests violated this Court's Scheduling Order. (*Id.*;

*see* Doc. 113). They argue that "[w]hat followed was a perplexing attempt to combine

the two sets of discovery into one that resulted in significant time wasted by Plaintiff's

counsel" and that "[a] similar situation played out as it relates to their proposed ESI

protocol which, if used, would have produced a mountain of irrelevant and

meaningless documentation." (*Id.*). They argue that "Plaintiff's counsel goes on to

blame Defendants for the lack of material produced pursuant to the agreed-upon ESI

protocol, despite being the ones who proposed the search terms laid out therein." (*Id.*).

They also insist that Plaintiff "seeks a gross production of irrelevant non-party

protected health information by removing redactions of identifiers for non-party

prisoners wholly irrelevant to this matter." (*Id.*). Wexford insists that "Plaintiff

rejected their proposed search terms" and now "attempts to absolve themselves of any responsibility for an issue they created." (*Id.*, p. 6).

Regarding Plaintiff's requests for supplemental answers to interrogatories 3–6, 8–10, 12, and 13 and requests for production 1–7 and 13, the Wexford Defendants state that "Defendants have agreed to supplement interrogatories 3 and 8 and request for production 13," that "Defense counsel is following up with their client on their answers to interrogatories 4-6, 12, and 13," and that "Defendants will further agree to supplement their answer to interrogatory 9," leaving only interrogatory 10 and requests for production 1–7 outstanding. (*Id.*).

Amended interrogatory 10 states the following:

> Identify all medical staff members, including but not limited to nurses, who were assigned to pass out medications at Menard Correctional Center ("Menard") on each day between October 15, 2021 and October 31, 2021. For each person identified, state to which unit that person was assigned.

(Doc. 178, p. 12). Brown states that his request "asks for a list of staff who were assigned (i.e., not just licensed, but actually tasked with) passing out medications at Menard between the same dates and the units to which those staff members were assigned." (*Id.*, p. 17). Wexford states that it already provided this list of personnel responding to this request. (Doc. 179, p. 6). Accordingly, this request shall be denied.

Requests for production 1–7 state the following:

> **RFP 1:** All Wexford and IDOC standard operating procedures, policies, and training manuals concerning the provision of mental health care to individuals in custody in effect at Menard.

> **RFP 2:** All Wexford and IDOC standard operating procedures, policies, and training manuals related to the placement of individuals in custody into residential treatment units (RTUs), including but not limited to the

determining criteria to place an individual in an RTU and the policies regarding the administration of mental health care to a person housed in the RTU at Menard.

**RFP 3:** All Wexford and IDOC standard operating procedures, policies, and training manuals related to enforced medication status at Menard, including but not limited to the determining criteria to place an individual in enforced medication status and the policies regarding the administration of medication and other mental health treatment to a person on enforced medication status.

**RFP 4:** All Wexford and IDOC standard operating procedures, policies, and training materials related to mental health treatment for individuals incarcerated at Menard who report wanting to self-harm and commit suicide, including policies related to requests for crisis intervention.

**RFP 5:** All Wexford and IDOC standard operating procedures, policies, and training materials relating to investigation and reporting of self-harm and suicide incidents at Menard.

**RFP 6:** All Documents and Communications relating to any/all prisoner complaints regarding the failure to receive medications at Menard.

**RFP 7:** All Documents and Communications relating to any/all investigations into the failure to administer medications at Menard.

(Doc. 178, pp. 10–11 (footnote omitted)).

Regarding requests for production 1–5, Brown insists that the Wexford Defendants have not provided an update on whether Wexford has policies separate from IDOC. (*Id.*, p. 16). In response, the Wexford Defendants state that "[d]efense counsel has informed Plaintiff on numerous occasions, as well as stating in their discovery responses, that they follow the IDOC's behavioral and mental health guidelines." (Doc. 179, pp. 6–7). Therefore, this inquiry has been resolved and Brown's request for an amended response shall be denied.

Regarding requests for production 6 and 7, Brown seeks materials regarding other prisoners' complaints and investigations into alleged failures to administer medications at Menard. (Doc. 178, pp. 18–19). He insists that Wexford objected on HIPAA grounds, but that such information is covered by the Confidentiality Order in this case. (*Id.*, p. 18 (footnote omitted) (citing *id.*, Ex. 1, pp. 4–5, 16, 27; *id.*, Ex. 10, pp. 25–26, 40)). He also argues that Defendants *cannot* object on HIPAA grounds. (*Id.*, pp. 19–20 (citing *Nw. Memorial Hosp. v. Ashcroft*, 362 F.3d 923, 924–25 (7th Cir. 2004))). Wexford argues in opposition that "Plaintiff's counsel essentially argues that they should be entitled to all non-party prisoners' medical information because there is a HIPAA Protective Order" and that "the HIPAA Order is not a discovery order." (Doc. 179, p. 7).

This Court concurs with Wexford with respect to requests for production 6 and 7. First, Plaintiff's discussion of *Northwestern Memorial Hospital* is unavailing. (*See* Doc. 178, pp. 19–20 (citing 362 F.3d 923, 924–25)). While the Seventh Circuit did hold that HIPAA did not impose state evidentiary privileges on suits to enforce federal law, it determined that the subpoena *did* impose an undue burden on the hospital, affirming the holding of the district court. 362 F.3d 923, 924–32. Additionally, while the Confidentiality Order (Doc. 148) in this case protects sensitive health information, it does not provide Plaintiff with a license to obtain vast amounts of data. Here, Plaintiff has not shown how the records he seeks are either relevant or proportional to the needs of this case. Federal Rule of Civil Procedure 26(a) does not require a party to produce every relevant document in a case; rather, it only requires the party to produce documents that may be used to support their claims or defenses.

Page 9 of 11

Brown is not entitled to the investigation records of *every claim* involving an alleged failure to provide medication; such a staggering amount of information on other prisoners' alleged claims is neither relevant nor proportional here. Therefore, this Court holds that requests for production 6 and 7 are overbroad and disproportional to the needs of this case; Brown's Motion shall be denied with respect to these requests for production.

## II. Motion to Leave to Serve Second Set of Requests for Production to Wexford and IDOC Defendants (Doc. 180)

In his second Motion (Doc. 180), Brown insists that "that the Defendants' refusal to adopt the Amended RFPs have caused unnecessary delay in the discovery process" and states that he is submitted a separate motion in the interest of expediency. (*Id.*, p. 2).

Recall that this is not the first time that Plaintiff Brown has injected confusion into this litigation which required this Court's intervention. (*See* Doc. 172). He previously attempted to substitute Steven Bowman for Louis Shicker as IDOC Medical Director because of "mistaken identity" six months after Shicker was named the Second Amended Complaint (*see* Docs. 120, 172) and attempted to relate claims against Rob Jeffreys, William Puga, and Melvin Hinton back to his original *pro se* Complaint, claims which had been dismissed at preliminary review over two years previously (*see* Doc. 172). This Court is not moved by Brown's statement that he "overlooked the limits set by the Court on the number of discovery requests" when this Court's Orders have been explicit. (Doc. 178 (citing Doc. 113); *see also* Doc. 180 (citing Doc. 113)). This Court has "extremely broad discretion in controlling

discovery," *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013), including to limit the scope of discovery and require a specific sequence, *Cloverleaf Golf Course, Inc. v. FMC Corp.*, No. 11-CV-190-DRH, 2011 WL 2838178, at *2 (S.D. Ill. July 15, 2011). *See Steward v. Honeywell Int'l, Inc.*, No. 3:18-CV-1124-SMY-MAB, 2019 WL 4954811 (S.D. Ill. July 9, 2019) (quoting and citing the same).

That being said, Defendants Wills, Lawrence, Crain, Martin, Morris, Reister, Brand, and Ogle did not object to Brown's Motion to file a second set of requests for production. (Doc. 180). Local Rule 7.1(a)(5) states that "failure to file a timely response to a non-dispositive motion may be deemed consent to the relief as requested." Accordingly, Brown's request to serve additional requests for production shall be granted.

## CONCLUSION

Considering the above, Plaintiff Allen Brown, Jr.'s Motion to Compel (Doc. 178) is **DENIED** and his Motion for Leave to File Additional Requests for Production (Doc. 180) is **GRANTED**.

**IT IS SO ORDERED.**

**DATED:  May 6, 2026**

s/ *Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**
